**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ───────────────────────────────── ) | |
| MARYJO MILLER, individually and on ) | |
| behalf of her minor daughter, MARISSA ) | |
| MILLER; JAMI DAY, individually and on ) | Civil Action No. _____ |
| behalf of her minor daughter, GRACE ) | |
| KELLY; JANE DOE, individually and ) | |
| on behalf of her minor daughter, NANCY ) | |
| DOE, ) | |
| ) | |
| *Plaintiffs,* ) | |
| ) | |
| v. ) | |
| ) | |
| GEORGE SKUMANICK, JR., in his official ) | |
| capacity as District Attorney of Wyoming ) | |
| County, Pennsylvania, ) | |
| ) | |
| *Defendant.* ) | |
| ───────────────────────────────── ) | |

**<u>VERIFIED COMPLAINT</u>**

**INTRODUCTION**

Plaintiffs in this civil rights action are three teenage girls and their

parents. The Defendant, Wyoming County District Attorney George

Skumanick, has threatened to prosecute the three girls for child pornography

Dockets.Justia.com

for their roles in the creation of two digital photographs unless the parents agree to place the girls on probation and send them to a five-week, ten-hour re-education program wherein the girls must discuss why their conduct was wrong and what it means to be a girl. One photo shows Marissa and Grace, from the waist up, lying side by side in their bras, with one talking on a telephone and the other making a peace sign. The other photo shows Nancy Doe standing upright, just emerged from the shower, with a white towel wrapped tightly around her body just below the breasts. The two photographs, which depict no sexual activity or display of pubic area, are not illegal under Pennsylvania's crimes code and, indeed, are images protected by the First Amendment.

Skumanick nevertheless persists in threatening to prosecute the girls because he has deemed the photos "provocative." Since there is no basis to prosecute the girls for posing in photographs that plainly are not child pornography, in terms of content or production, Skumanick's threat to prosecute the girls must be considered retaliation against the plaintiffs for asserting their constitutional rights – the parents' right to direct their children's upbringing and the girls' rights both to free expression and

against compelled speech – in refusing Skumanick's demands.
Accordingly, plaintiffs seek declaratory and injunctive relief to enjoin
Skumanick from bringing the retaliatory criminal charges against plaintiffs
based on their refusal to accede to his demand that they submit to probation
and participate in the re-education program.

## JURISDICTION AND VENUE

1.  This action to vindicate plaintiffs' rights, protected by the First and
    Fourteenth Amendments to the U.S. Constitution, is brought under 42
    U.S.C. § 1983.  This Court has original jurisdiction over this civil rights
    action under 28 U.S.C. §§ 1331 and 1343.  This Court also has jurisdiction
    under 28 U.S.C. §§ 2201 and 2202 to declare the rights of the parties and to
    grant all further relief found necessary and proper.

2.  Venue is proper in the Middle District of Pennsylvania under 28 U.S.C.
    §1391(a) because defendant is subject to personal jurisdiction within this
    district and the events at issue occurred and are occurring within the Middle
    District of Pennsylvania.

## PARTIES

3.  Plaintiff MaryJo Miller is a resident of Tunkhannock, Pennsylvania.  Her

daughter, Plaintiff Marissa Miller, is a teenager enrolled in the

Tunkhannock School District. MaryJo Miller brings this action to

vindicate both her own constitutional rights as a parent, as well as the First

Amendment rights of her minor daughter.

4. Plaintiff Jami Day is a resident of Tunkhannock, Pennsylvania. Her

daughter, Plaintiff Grace Kelly, is a teenager enrolled in the Tunkhannock

School District. Jami Day brings this action to vindicate both her own

constitutional rights as a parent, as well as the First Amendment rights of

her minor daughter.

5. Plaintiff Jane Doe, a pseudonym, is a resident of Tunkhannock,

Pennsylvania. Her daughter, Nancy Doe, is a teenager. Jane Doe brings

this action to vindicate both her own constitutional rights as a parent, as

well as the First Amendment rights of her minor daughter.

6. Defendant George Skumanick, Jr., is and at all relevant times hereinafter

mentioned was the District Attorney of Wyoming County, Pennsylvania.

Skumanick is an elected public official whose actions in this matter were all

taken under color of state law. Skumanick is sued only in his official

capacity.

**FACTS**

7.     The practice of sending or posting sexually suggestive text messages and images, including nude or semi-nude photographs, via cellular telephones ("cell phones") or over the Internet, has become known as "sexting."

8.     Sexting typically involves the subject taking a picture of him or herself, or asking someone else to take it for him or her, using a digital camera or the cell phone's camera feature.

9.     The photograph, which is now stored as a digitized image, is then sent via the text-message or photo-send function on the cell phone, transmitted by computer through electronic mail ("e-mail"), or posted to an Internet website, most often one of the popular social-networking sites like Facebook or MySpace.

10.    Sexting has become widespread among American teenagers.  A recent survey found that approximately 20% of all teenagers (ages 13-19) have sent or posted nude or semi-nude pictures of themselves.  *Sex and Tech: Results from a Survey of Teens and Young Adults,* National Campaign to Prevent Teen and Unplanned Pregnancy, December 2008 (accessible at http://www.thenationalcampaign.org/sextech/PDF/SexTech_Summary.pdf).

11.   In Fall 2008, the practice of sexting emerged in the small northeastern Pennsylvania town of Tunkhannock.

12.   In October 2008, Tunkhannock School District officials confiscated several students' cell phones, examined them and discovered that they contained photographs of scantily clad, semi-nude and nude teenage girls, many of whom were enrolled in the School District.

13.   According to the School District, male students had apparently been trading the photos of the girls on their cell phones.

14.   The School District turned over the cell phones to Skumanick, the District Attorney and Wyoming County's chief prosecutor, who began a criminal investigation into the matter.

15.   In November 2008, Skumanick stated publicly, to local newspaper reporters and again at a Tunkhannock School District assembly at the high school, that students who possess inappropriate images of minors may be prosecuted for "sexual abuse of children" (18 P.S. § 6312, Pennsylvania's anti-child-pornography statute) or "criminal use of a communication facility" (18 P.S. § 7512).

16.   Skumanick, in his comments, noted that both charges are felonies, which

could result in a seven-year-prison sentence, and that even juveniles convicted on these charges would have a permanent record because the charges are felonies.

17.   Pennsylvania's Registration of Sexual Offenders Act ("Megan's Law"), 42 P.S. §§ 9791, *et seq.*, currently does not apply to juveniles convicted of felony sex offenses, which includes possessing or distributing child pornography.  But under the federal Sex Offender Registration and Notification Act ("SORNA"), 42 U.S.C. §§ 16911, *et seq.*, the state must amend its law by July 27, 2009, to conform to the SORNA requirements or it will suffer a "mandatory 10% reduction in Byrne Justice Grant Act funding."  *See* U.S. Dept. of Justice, FACT SHEET: The Proposed Guidelines for the Sex Offender Registration and Notification Act ("SORNA"), May 17, 2007 (a copy of the FACT SHEET can be accessed at http://www.pdsdc.org/Calendar/SummerSeries/SS07262007/04-DOJ%20Fact%20Sheet-Proposed%20Guidlines%20for%20SORNA.pdf).  The change would operate retroactively and apply to all juveniles over age fourteen convicted of predicate offenses, including 18 P.S. § 6312, *id.*, which means that all three plaintiff minors would on a conviction be subject to Megan's

Law registration for at least ten years and have their names and pictures displayed on the state's sex-offender Internet website.

18. Skumanick sent a letter dated February 5, 2009, to the parents of approximately twenty Tunkhannock students, including Plaintiffs Miller, Day/Kelly and Doe. A copy of the letter is attached as Exhibit 1.

19. Upon information and belief, Skumanick sent the letter not to students responsible for disseminating the photographs, but to the students on whose cell phones the photos were stored and, more importantly for this case, the girls shown in the photos.

20. The letter conveyed the following important information to the parent(s):

   a. their child "has been identified in a police investigation involving the possession and/or dissemination of child pornography";

   b. if the child "successfully completes" a six to nine-month program "which focuses on education and counseling . . . no charges will be filed and no record of his/her involvement will be maintained";

   c. parents and children are invited to a February 12 meeting to learn more about the crime and the plea deal being offered; and

   d. "... charges will be filed against those that do not participate or those

that do not successfully complete the program."

Exhibit 1.

21. The letter invited parents to contact Skumanick if they could not attend the meeting.  Ms. Miller and her ex-husband did so and met with Skumanick on the afternoon of February 10.  During the meeting Skumanick showed the parents the one photograph that formed the basis for his threatened prosecution.

22. The photo was an approximately two-year-old picture taken when Marissa and plaintiff Grace Kelly were thirteen years old.  It showed the two girls from the waist up, each wearing a white, opaque bra.  Marissa was on the phone while Grace held up her fingers, making a peace sign.

23. When Ms. Miller protested that the photos could not be considered child pornography because the girls were not even naked, Skumanick insisted that they could be because the girls were posed "provocatively."

24. When the Millers' objected and argued that their daughter and her friend had a right to a jury trial, Skumanick replied that in Juvenile Court there was no right to a jury trial.

25. Skumanick also told the Millers' that unless their daughter accepted the plea

deal he would prosecute both girls for felony child-pornography charges.

26. The meeting on the evening of February 12 was held inside the County courthouse.

27. Skumanick reiterated to a group of about twenty parents and students that he was prepared to file felony charges against any minor who refused to submit to probation, pay the $100 program fee, and participate in (or fail to successfully complete) the re-education program.

28. Skumanick indicated that he might lessen the six-month probation period if the children completed the program to his "standards."

29. One parent stood up during the meeting and asked how Skumanick could be prosecuting his daughter because, according to him, she was in the photograph wearing a bathing suit. Skumanick told the assembled crowd that she was posed "provocatively," which made her subject to a child-pornography charge.

30. In response to Skumanick's comment, Marissa's father stood up and asked who was deciding what was provocative. Skumanick replied that he was not going to argue and that he could charge all of the minors there that night but was instead offering them a plea deal. Skumanick also told Mr. Miller

that, "these are the rules if you don't like them, too bad."

31. Skumanick's responses to parents' questions about the nature and cost of the re-education program changed over time. While the February 5 letter stated that the course would run six to nine months, at the meeting Skumanick told the parents it would take place for two hours per week over a five-week period. Skumanick initially said the course would cost $150 but then reduced it to $100.

32. Details of the re-education program emerged subsequent to the February 12 meeting. An outline of the course, which is divided into a "Female Group" and a "Male Group," is attached as Exhibit 2. Among other things, the course will direct the girls to "[g]ain an understanding of how [their] actions were wrong," "[t]o gain an understanding of what it means to be a girl in today's society, both advantages and disadvantages," and "[i]dentify non-traditional societal and job roles."

33. At the February 12 meeting, Skumanick asked all the people assembled in the courthouse to sign an agreement whereby the minors agreed to be on probation and to participate in the re-education program. Only one parent agreed to sign the form for her child.

34. Skumanick then told the parents that they had forty-eight hours to agree to the offer or he would charge the minors. When parents objected to the short time frame Skumanick extended it to one week.

35. Skumanick told parents that he would show them the photograph of their child after the meeting.

36. After the meeting Skumanick showed Jane Doe a photo of Nancy Doe, which depicted Nancy with a white, opaque towel wrapped around her body, just below the breasts. It appeared that she had just gotten out of the shower. The photo was more than a year old.

37. Neither the photo of Nancy Doe nor the one with Marissa and Grace depicted sexual activity.

38. Neither of the photos showed the girls' genitalia or pubic area.

39. According to Skumanick, these photos were among those found on boys' cell phones in the school, but he has refused to divulge to plaintiffs the identities of the cell phone owners.

40. Skumanick has steadfastly refused to provide plaintiffs' counsel with a copy of the two photos at issue in this case. He contends that they are "child pornography" and that he would be committing a crime by sharing a copy.

41. Skumanick's sole basis for threatening to prosecute the three girls is that they allowed themselves to be photographed. In a conversation with counsel in early March, Skumanick asserted that the girls were accomplices to the production of child pornography. Counsel confirmed Skumanick's position in a letter dated March 13, a copy of which is attached as Exhibit 3. Skumanick has not advised plaintiffs' counsel that the March 13 letter's characterization of the March 3 telephone conversation is incorrect.

42. Plaintiffs received another letter, which was dated February 23, on or about February 25 from the Wyoming County Court of Common Pleas' Juvenile Court Services division. A copy of this letter is attached as Exhibit 4.

43. The letter advised the parents that they were scheduled for an appointment on Saturday, February 28, at 8:30 a.m. in the County Courthouse to "finalize the paperwork for the informal adjustment." An "informal adjustment" is effectively a guilty plea in the juvenile-delinquency context allowing for probation before judgment. *See* 42 Pa.C.S.A. § 6323.

44. According to people who attended this meeting, court personnel advised the assembled parents and minors that in addition to the re-education course, the juveniles would be on probation for at least six months and would be

subject to drug testing during that period.

45.  Upon information and belief, every parent and minor, except the three families represented in this action, acceded to Skumanick's demands under threat of felony prosecution and accepted the informal adjustment.

46.  Skumanick has temporarily deferred prosecution of Miller, Kelly and Doe at undersigned counsel's request, in order to allow undersigned counsel to research and investigate the threatened charges.

47.  Skumanick has, however, persisted in his threat that if the three girls do not agree to the informal disposition he will prosecute them criminally.

48.  The three plaintiff minors have committed no crime by simply having allowed themselves to be photographed, either in their underwear or topless.

49.  The provisions of 18 P.S. § 6312 prohibit depicting, possessing or disseminating images of "sexual intercourse...., masturbation, sadism, masochism, bestiality, fellatio, cunnilingus, lewd exhibition of the genitals or nudity if such nudity is depicted for the purpose of sexual stimulation or gratification of any person who might view such depiction."

50.  The images of plaintiffs do not fall within the definition of the materials prohibited by § 6312.

51. The provisions of 18 P.S. § 6312 prohibit depicting, possessing or disseminating prohibited images. Plaintiffs have been threatened with prosecution simply for appearing in the images.

52. The plaintffs have violated no other statute of the Commonwealth of Pennsylvania by allowing themselves to be photographed in private in their underwear or topless.

52. Skumanick's threat to prosecute the three girls criminally is completely without merit, and thus is made in bad faith as he has no, and can have no, reasonable expectation of obtaining a conviction.

53. Indeed, the two photographs at issue are expression that is protected by the First Amendment, which means that any prosecution brought by Skumanick would be unconstitutional.

54. Unless the photographs were produced by abusing or coercing the minors, which they were not, or they show the minors engaged in sexual activity or lasciviously displaying the genitals, and again they do not, the photos are expression protected by the First Amendment to the U.S. Constitution.

55. Moreover, Skumanick's decision to prosecute the subjects of the photographs, the three plaintiff minors, is unprecedented and stands anti-

child-pornography laws on their head. Anti-child-pornography laws are intended to protect the children shown in the photos and videos, and plaintiffs' counsel has found no published Pennsylvania or federal court decision sustaining such a prosecution against minors shown in such pictures.

56. The plaintiff minors in the photos are, if anything, the victims in this case. Someone else — not they — disseminated the photos without their permission to a large group of people.

57. Skumanick's threatened prosecution chills Plaintiffs' First Amendment right of expression, causing them concern about whether they may photograph their daughters, or whether the girls may allow themselves to be photographed, wearing a two-piece bathing suit.

58. The plaintiff minors will in the near future want to be photographed in their bathing suits, for instance during the summer when they go to a swimming pool or the beach, to which the respective parents have no objection. They are, however, chilled in their ability to take such photographs because of concern whether Skumanick will find them "provocative."

59. Furthermore, Skumanick's insistence that the plaintiff parents force their

children to attend a re-education course interferes with the parents' right to direct and control their children's upbringing. Among other things, the course requires the girls to "[g]ain an understanding of how [their] actions were wrong," "gain an understanding of what it means to be a girl in today's society," and "[i]dentify non-traditional societal and job roles." Exhibit 2. While a prosecutor may be able to force the girls to participate in such a program as part of an informal disposition when there is probable cause to believe the girls committed a crime, in the absence of such evidence the threatened prosecution to force the girls' participation violates the parents' Fourteenth Amendment right to direct their children's upbringing.

60. Skumanick's demand that the girls participate in the re-education program, which requires them to write a homework paper explaining "how [their] actions were wrong," violates the plaintiff minors' right to be free from compelled speech.

61. Absent injunctive relief, preliminary and permanent thereafter, plaintiffs' constitutional rights will be irreparably harmed. Additionally, since Skumanick enjoys prosecutorial immunity, plaintiffs have no remedy at law should this Court deny injunctive relief.

## FIRST CAUSE OF ACTION
## (RETALIATION IN VIOLATION OF FIRST AMENDMENT RIGHT TO FREE EXPRESSION)

62. Skumanick may personally disapprove of the fact that the girls allowed themselves to be photographed as they did, or in his words, for being "provocative," but absent a legitimate basis to believe that the girls have committed a crime he may not threaten them with serious felony charges in order to force their participation in a re-education program, probation and drug testing.

63. The two photographs, one of Marissa and Grace and the other of Nancy Doe, were not made by abusing or coercing the girls, were not made for commercial purposes, and do not depict sexual activity or lascivious display of the genitals or pubic area. They are, therefore, expression protected by the First Amendment to the U.S. Constitution.

64. Skumanick's threat to charge the plaintiff minors with felony criminal charges unless they agree to participate in a re-education program, be placed on probation and submit to suspicionless drug testing because they allowed themselves to be photographed in a way that Skumanick disapproves constitutes retaliation in violation of the First Amendment to the U.S.

Constitution and chills their exercise, and their parents' exercise, of First Amendment rights.

## SECOND CAUSE OF ACTION
### (RETALIATION IN VIOLATION OF FIRST AMENDMENT RIGHT TO BE FREE FROM COMPELLED EXPRESSION)

65. Skumanick's threat to file felony charges against the plaintiff minors, charges for which there is absolutely no evidence or cause, unless the girls participate in a program that requires them to write a paper explaining "how [their] actions were wrong," constitutes retaliation against the girls for exercising their right to be free from compelled speech, a right protected by the First Amendment to the U.S. Constitution.

## THIRD CAUSE OF ACTION
### (RETALIATION AGAINST PLAINTIFF PARENTS FOR EXERCISING THEIR FOURTEENTH AMENDMENT SUBSTANTIVE DUE PROCESS RIGHT AS PARENTS TO DIRECT THEIR CHILDREN'S UPBRINGING)

66. Skumanick's illegitimate use of government authority to coerce the plaintiff parents to send their daughters to a re-education course that, among other things, would direct the girls to "[g]ain an understanding of how [their] actions were wrong," "gain an understanding of what it means to be a girl in today's society," and "[i]dentify non-traditional societal and job roles,"

infringes on the plaintiff parents' Fourteenth Amendment substantive due process right to direct and control their children's upbringing.

## PRAYER FOR RELIEF

WHEREFORE, in light of the foregoing, Plaintiffs respectfully request the following:

(a)    A declaratory judgment that Skumanick's threat to prosecute the three minors shown in the two photographs, which under Pennsylvania law are not child pornography or any other crime and are, indeed, protected expression under the First Amendment, is unlawful retaliation that violates the First Amendment;

(b)    A declaratory judgment that Skumanick's threat to prosecute the three minors shown in the two photographs, a threat that has no basis in Pennsylvania criminal law, interferes with the plaintiff parents' right to direct and control their children's upbringing, a right safeguarded by the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution;

(c)    An injunction, preliminary and permanent thereafter, enjoining Skumanick, his employees, agents, assigns and all those acting in

concert with him, from initiating criminal charges against plaintiffs Marissa Miller, Grace Kelly and Nancy Doe for the two photographs at issue, or for any other photographs of the girls unless the images depict sexual activity or exhibit the genitals in a lascivious way.

(d)     Award plaintiffs the costs incurred in this litigation, including attorneys' fees pursuant to 42 U.S.C. § 1988; and

(e)     such other relief as the Court deems just and proper.


Respectfully submitted,

  /s/ Witold J. Walczak
Witold J. Walczak
PA ID No.:  62976

AMERICAN CIVIL LIBERTIES FOUNDATION
  OF PENNSYLVANIA
313 Atwood Street
Pittsburgh, PA  15213
(412) 681-7864 (tel.)
(412) 681-8707
vwalczak@aclupgh.org


  /s/ Valerie A. Burch
Valerie A. Burch
PA ID No.: 92873

AMERICAN CIVIL LIBERTIES FOUNDATION
  OF PENNSYLVANIA
105 North Front Street, Suite 225
Harrisburg, PA 17101
(717) 236-6827 (tel.)
(717) 236-6895 (fax)
vburch@aclupa.org


   /s/ Seth F. Kreimer
Seth F. Kreimer
PA I.D. No. 26102
3400 Chestnut Street
Philadelphia, PA 19104
(215) 898-7447 (tel.)

*Counsel for Plaintiffs*

March 25, 2009

## VERIFICATION

I, _MAryJo Miller_____, HEREBY DECLARE under penalties of perjury that I am over the age of eighteen and otherwise competent to testify, and that the allegations in the foregoing <u>Verified Complaint</u> are, to the best of my recollection and belief, true and accurate.

_MauJo Miller_____

_3/23/09___
date

## <u>VERIFICATION</u>

I, _Cami Day_____, HEREBY DECLARE under penalties of perjury
that I am over the age of eighteen and otherwise competent to testify, and that the
allegations in the foregoing <u>Verified Complaint</u> are, to the best of my recollection
and belief, true and accurate.

_3-23-09_____
   date

## <u>VERIFICATION</u>

I, _Jane Doe_ , HEREBY DECLARE under penalties of perjury
that I am over the age of eighteen and otherwise competent to testify, and that the
allegations in the foregoing <u>Verified Complaint</u> are, to the best of my recollection
and belief, true and accurate.

_Jane Doe_

_3/23/09_
date