## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARYJO MILLER, individually and on behalf of her minor daughter, MARISSA MILLER; JAMI DAY, individually and on behalf of her minor daughter, GRACE KELLY; JANE DOE, individually and on behalf of her minor daughter, NANCY DOE, <br><br> *Plaintiffs*, <br><br> v. <br><br> GEORGE SKUMANICK, JR., in his official capacity as District Attorney of Wyoming County, Pennsylvania, <br><br> *Defendant.* | Civil Action No. 09-540 <br> (Judge Munley) |

## MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION

## INTRODUCTION

The Wyoming County District Attorney, Defendant George Skumanick, Jr., may in good faith believe that he has insights to share regarding "what it means to be a girl in today's society" or the possibilities of sexual harassment. He is free to offer the young women of Wyoming County the opportunity to learn from his

insights.  But he is not free to threaten prosecution of baseless charges against those young women who refuse his offer.

In this case Skumanick threatens to prosecute the three plaintiff minors on felony-child-pornography charges over two photographs that he regards as "provocative" if their parents do not agree to place the girls on probation and send them to a five-week ten-hour re-education program where the girls must discuss "why their conduct was wrong" and "what it means to be a girl." *See* Verified Complaint (hereafter "Complaint') ¶¶ 15-34, 43-44, 46-47.  Skumanick bases his threats on two digital images of plaintiffs that were discovered on their classmates' cell phones by Tunkhannock High School officials.  *Id.* ¶¶ 21-36.  One photograph was taken approximately two years ago when Plaintiffs Marissa Miller and Grace Kelly were thirteen-years old.  *Id.* ¶ 22.  It shows the two girls from the waist up, each wearing an opaque white bra.  *Id.*  Marissa is shown on the telephone while Grace is shown holding up her fingers in a peace sign.  *Id.*  The second photograph, also about a year old, depicts Nancy Doe, standing, with an opaque white bath towel wrapped around her body just below the breasts.  *Id.* ¶¶ 36-38.  The photo appears to have been taken right after she emerged from the shower.  *Id.* ¶ 36. The two photographs, neither of which show sexual activity or

2

reveal anything below the waist, *Id*. ¶¶ 37-38, are not illegal under Pennsylvania's crimes code and, indeed, are images protected by the First Amendment.[1]

Skumanick has grounded the threatened prosecutions on his belief that the photos are "provocative."  Complaint, ¶¶ 23, 29-30.  But he cannot use his prosecutorial authority to force young women to conform their otherwise legal conduct to his personal taste.   Skumanick's threat to prosecute the girls if they and their parents assert their rights – the parents' right to direct their children's upbringing and the girls' rights both to free expression and against compelled speech – to refuse Skumanick's demands is thus unconstitutional retaliation that violates the First and Fourteenth Amendments to the U.S. Constitution. Accordingly, plaintiffs seek declaratory and injunctive relief to bar Skumanick from bringing the retaliatory criminal charges against plaintiffs for their refusal to accede to his demand that they submit to probation and participation in the re-education program.

---

[1] Defendant Skumanick has shown the photographs at issue to the parents, but he has steadfastly refused to provide plaintiffs' counsel a copy.  *See* Complaint ¶ 40.  Accordingly, a motion is being filed on this date asking this Court to direct Skumanick to provide plaintiffs' counsel with a copy of the two photos, which then will be filed with this Court.

## ARGUMENT

Under Fed. R. Civ. P. 65, this Court must weigh four factors when deciding whether to grant a motion for temporary restraining order or preliminary injunction: (1) has the movant shown a reasonable probability of success on the merits; (2) will the movant be irreparably harmed by denial of the relief; (3) will granting preliminary relief result in even greater harm to the non-moving party; and (4) is granting preliminary relief in the public interest.[2]  All four factors in this case weigh clearly in favor of granting the requested injunction.

## FACTUAL BACKGROUND

Plaintiffs incorporate by reference the factual allegations contained in the Verified Complaint.

## I.    PLAINTIFFS ARE LIKELY TO PREVAIL ON THE MERITS OF THEIR CONSTITUTIONAL CLAIMS.

Defendant Skumanick has expressed his disapproval of the plaintiff minors' photographs, calling them "provocative."  Complaint, ¶¶ 23, 29, 30.  But "provocative" photos are not illegal, even if their subjects are minors.  Photos of minors are legal under Pennsylvania law unless they contain depictions of minors engaged in sexual activity, the lewd exhibition of the genitals, or nudity if such

---

[2] *American Civil Liberties Union v. Reno*, 217 F.3d 162, 172 (3d Cir. 2000) (citations omitted).

nudity is depicted for the purpose of sexual stimulation or gratification of any person who might view such depiction.[3]  Because neither of the photos of the plaintiff minors depict sexual activity, genitalia, or nudity for the purpose of sexual stimulation or gratification, they cannot constitute child pornography, and Skumanick may not legally use his official authority as a district attorney to compel the girls to pay $100 to participate in a ten-hour victimology education program that he helped to design.  Yet if the girls persist in refusing to attend the program by standing on their First Amendment right against compelled speech, and their parents refuse to direct their daughters into the program based on their Fourteenth Amendment right to decide how to raise their children, Skumanick has assured plaintiffs that he will retaliate by filing meritless felony charges against the girls.  *See* Complaint ¶¶ 18-30, 43-47.  In essence, Skumanick is forcing the girls and their families to make a choice:  *Either* relinquish your First Amendment and Fourteenth Amendment rights *or* endure a felony prosecution for baseless charges.  While it might be constitutional to give a juvenile defendant a choice between prosecution and education/probation if the prosecution were grounded in lawful charges, when the prosecution is baseless, as it is here, that "choice" is an unconstitutional abuse of governmental authority.  Consequently, as discussed

---

[3] 18 P.S. § 6312(a).

below, plaintiffs are likely to prevail on their claim that Skumanick's threatened

prosecution is unconstitutional retaliation.

Plaintiffs should not be required to risk felony charges to exercise their right

to refuse to participate in Skumanick's "victimology" program.[4]  Although the

retaliation has not yet occurred, it is "of sufficient immediacy and reality to

warrant the issuance" of an order enjoining the threatened prosecution.[5]

## A.    Retaliation Law

The Third Circuit applies a three-part test to analyze retaliation claims:

"Plaintiff must prove that (1) he engaged in constitutionally-protected activity; (2)

the government responded with retaliation; and (3) the protected activity caused

the retaliation."[6]  Skumanick's threatened prosecution is unconstitutional

---

[4] *See Medimmune v. Genetech*, 549 U.S. 118, 128-29 (2007) ("[W]here threatened action by *government* is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat").

[5] *Steffel v. Thompson*, 415 U.S. 452, 460 (1974).  *See also Doran v. Salem Inn, Inc.*, 422 U.S. 922 (1975) (granting TRO to enjoin state criminal prosecution); *Presbytery of New Jersey v. Florio*, 40 F.3d 1454 (3d Cir. 1994) (district court should have assumed jurisdiction to enjoin "real threat of prosecution" where state refused to give assurance that it would not prosecute).

[6] *See Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 282 (3d Cir. 2004). While retaliation cases are often brought over government officials' retaliatory acts against people who exercise their First Amendment free-speech rights, the doctrine applies whenever there is official retaliation for the exercise of "any

retaliation because (1) plaintiff minors have a constitutional right to decide not to attend the victimology program where they will be compelled to discuss why allowing themselves to be photographed was wrong and the plaintiff parents have a Fourteenth Amendment right to direct their children's education; (2) any prosecution of the girls by Skumanick would constitute adverse action; and (3) since the conduct underlying the prosecution is not illegal under Pennsylvania law (and, indeed, is also constitutionally protected), the basis for the prosecution would be plaintiffs' refusal to participate in the education program.

> **1.    Skumanick's Insistence that the Girls Participate in a the Re-education Program or be Prosecuted Criminally Invades the Constitutional Rights of Both the Parent and Child Plaintiffs**
>
> > **a.    Plaintiff Parents Have a Constitutional Right to Direct the Education of their Children.**

The Third Circuit recently explained that "[t]he Supreme Court has long recognized that the right of parents to care for and guide their children is a protected fundamental liberty interest. … [that is] deeply rooted in this Nation's

---

constitutional right...." *Anderson v. Davila*, 125 F.3d 148, 162 (3d Cir. 1997) ("official retaliation for the exercise of *any* constitutional right creates an actionable claim under Section 1983") (emphasis in original); *see Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (plaintiff must allege "constitutionally protected conduct").

history and tradition."[7]  "[C]hoices about … family life, and the upbringing of children are among associational rights [the Supreme] Court has ranked as of basic importance in our society, rights sheltered by the Fourteenth Amendment against the State's unwarranted usurpation, disregard or disrespect.'"[8]  An essential component of parents' right to raise their children is the recognition that "it is the parents' responsibility to inculcate moral standards, religious beliefs, and elements of good citizenship."[9]  While compulsory education laws have been upheld, even in school educators must respect the primacy of parents' rights over their children.[10]

Absent the girls' commission of a crime, and as discussed below they have committed no crime, Skumanick's disapproval of their actions in posing for the pictures provides no legal justification to override the parents' right to refuse to

---

[7] *Anspach v. City of Philadelphia*, 503 F.3d 256, 261 (3d Cir. 2007) (citations and interior quotations omitted); *see also, e.g.*, *Troxel v. Granville*, 530 U.S. 57, 66 (2000); *Gruenke v. Seip*, 225 F.3d 290, 303-04 (3d Cir. 2000).

[8] *Gruenke*, 225 F.3d at 303-04 (quoting *M.L.B v. S.L.J.*, 519 U.S. 102, 116 (1996)).

[9] *Id.* at 307 (citations and internal quotations omitted).

[10] *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 183 (3d Cir. 2005) ("It is not educators, but parents who have primary rights in the upbringing of children. School officials have only a secondary responsibility and must respect these rights.").

send their daughters to a re-education course that will teach them to, *inter alia*, "gain an understanding of what it means to be a girl in today's society," and "[i]dentify non-traditional societal and job roles." The plaintiff parents have a constitutionally protected right to decide not to send their daughters to a reeducation program with which they disagree.[11] As in *Gruenke*, where the Third Circuit held that a high school swim coach who insisted that a girl take a pregnancy test "had no right to obstruct the parental right to choose the proper method of resol[ving]" the teen pregnancy,[12] in this case Skumanick has no right to coerce the plaintiff parents into sending their daughters to a ten-hour-education course teaching them that they have done something wrong and what Skumanick thinks it means to be a girl. That is the parents' domain.

---

[11] *See, e.g.*, *Rhoades v. Penn-Harris-Madison School Corp.*, 574 F. Supp. 2d 888, 899 (N.D. Ind. 2008) ("School-sponsored counseling and psychological testing that pry into private family activities can overstep the boundaries of school authority and impermissibly usurp the fundamental rights of parents to bring up their children, as they are guaranteed by the Constitution."); *Merriken v. Cressman*, 364 F. Supp. 913, 922 (E.D. Pa. 1973) (questionnaire probing family relationships by school authorities held unconstitutional).

[12] 225 F.3d at 306.

### b.    The Plaintiff Minors Have a Right to be Free from Compelled Speech.

The flip side of the parental rights' argument is that the girls have a First Amendment right not to be compelled to engage in speech with which they disagree, such as being forced to write an essay "about what you did wrong."  The First Amendment protects not only an individual's right to speak freely, but also her right to refrain from speaking, which is often referred to as the right to be free from compelled speech.[13]  Since the girls' conduct was not illegal under Pennsylvania law, they do not agree that what they did was wrong and having to write an essay to that effect "invades the sphere of intellect and spirit which it is the purpose of the First Amendment to our Constitution to reserve from all official control."[14]  That defendant may personally believe that the girls' participation in the reeducation program would be beneficial to them is of no moment: The Supreme Court recognized in *Barnette* that "[w]hether the First Amendment to the Constitution will permit officials to order observance of ritual of this nature does

---

[13] *See, e.g., McIntyre v. Ohio Elections Comm'n,* 514 U.S. 334, 346-49 (1995); *Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston,* 515 U.S. 557 (1995); *Wooley v. Maynard*, 430 U.S. 705, 714 (1977); *West Virginia State Bd. of Educ. v. Barnette,* 319 U.S. 624, 642 (1943).

[14] *Barnette*, 319 U.S. at 642 (holding that mandatory participation in Pledge of Allegiance violated schoolchildren's First Amendment free-speech rights).

not depend upon whether as a voluntary exercise we would think it to be good, bad or merely innocuous."[15]

### B. Prosecuting Plaintiffs for Refusing to Participate in the Re-education Program Would Plainly Constitute an Adverse Action.

Criminal prosecution is plainly an adverse action.[16]  Adverse actions are those that would deter a person of ordinary firmness from exercising their constitutional rights.[17]  This Court has held that "[t]he initiation of criminal charges and subsequent arrest constitute conduct that would deter a person of ordinary firmness from exercising his constitutional rights."[18]  Accordingly, the plaintiff minors would be subject to an adverse action if they are prosecuted for child pornography.  The plaintiff parents would also be subject to an adverse

---

[15] *Id.* at 634.

[16] *See, e.g.*, *Hartman v. Moore*, 547 U.S. 250, 256 (2006) ("The First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out.").

[17] *E.g.*, *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003).

[18] *O'Malley v. Lukowich*, No. 3:08-CV-0680, 2008 WL 4861477, *8 (M.D. Pa. Nov. 7, 2008) (citing *Blankenship v. Manchin*, 471 F.3d 523, 531 (4th Cir. 2006) (deterrence likely where state actor has "'engaged the punitive machinery of the government in order to punish'" a person for speaking out) (quoting *Garcia v. City of Trenton*, 348 F.3d 726, 729 (8th Cir. 2003)); *McCormick v. City of Lawrence*, 253 F. Supp. 2d 1172, 1197 (D. Kan. 2003) ("the threat of arrest by a police officer is exactly the sort of act that would deter a person of ordinary firmness from exercising his or her First Amendment right to orally challenge that officer")).

action if their teenage daughters were prosecuted for child pornography.  Although

the parents themselves are not threatened with prosecution, the prosecution of

one's minor children on felony charges in retaliation for the parent's exercise of

constitutional rights would deter a parent of ordinary firmness from exercising

those rights.[19]

> **C.    Because There Is No Legal Basis for the Threatened Criminal Charges, Skumanick's Prosecution of Plaintiffs Would Constitute Retaliation for Plaintiffs' Exercise of Their Constitutionally Protected Right to Refuse to Participate in the Reeducation Program.**

In order to compel plaintiffs to participate in the re-education program,

Defendant Skumanick has threatened to prosecute the girls for child pornography

if they refuse.  But the conduct for which Skumanick has threatened criminal

charges is not child pornography under Pennsylvania law.  First, the conduct of

appearing in the photos in question fails to state an offense, either under the child-

pornography statutes that Defendant Skumanick invokes or under other potentially

relevant Pennsylvania laws.  And second, the conduct could not, consistent with

---

[19] *See Cain v. Tigard-Tualatin Sch. Dist.*, 262 F. Supp. 2d 1120, 1130 (D.Or. 2003) (holding that high school football coach's physical and emotional abuse of parents' son was adverse action in retaliation context because it "would lead ordinary people in parents' position to refrain from engaging in future criticism of [coach] in order to protect their son from further harm").

the guarantees of the First Amendment to the U.S. Constitution and Article I,

Section 7 of the Pennsylvania Constitution, be made a crime, as the photos are

constitutionally protected images.  Because the conduct for which Skumanick has

threatened prosecution is not illegal under Pennsylvania law, Skumanick's

statement that he will prosecute the girls for child pornography if they do not

participate in his program is nothing more than a naked threat to force the

plaintiffs to do something that they have a constitutional right not to do.

Skumanick is not free to accomplish indirectly what he cannot do directly, and his

threat to prosecute the girls for nonexistent crimes if they and their parents insist

on exercising their constitutionally protected rights is unconstitutional retaliation.

### 1.    The Plaintiffs' Conduct of Appearing in the Pictures at Issue is not a Crime Under Pennsylvania Law.

Defendant Skumanick has threatened to charge the plaintiffs under 18

Pa.C.S. § 6312, Pennsylvania's anti-child-pornography statute.  But § 6312 is

inapplicable, on its face, for two reasons: 1) the images at issue do not meet the

statutory definition of child pornography; and 2) the conduct for which Skumanick

threatens to charge the girls, *i.e.*, allowing themselves to be photographed, is not a

crime under Pennsylvania law.

### a.    The Two Photos Do Not Fall within the Statutory Definition of Child Pornography.

Pennsylvania's anti-child-pornography statute does not, by its plain terms, apply to the photographs of the plaintiffs identified by Skumanick.  18 P.S. § 6312, entitled "Sexual abuse of children," defines "prohibited sexual act" to mean "sexual intercourse as defined in section 3101 (relating to definitions), masturbation, sadism, masochism, bestiality, fellatio, cunnilingus, lewd exhibition of the genitals or nudity if such nudity is depicted for the purpose of sexual stimulation or gratification of any person who might view such depiction." § 6312(a) (parenthetical in original).  This definition applies to three possible scenarios: images depicting (1) sexual activity; (2) lewd exhibition of genitals; or (3) "nudity if such nudity is depicted for the purpose of sexual stimulation or gratification of any person who might view such depiction."  None of these definitions does, or constitutionally can,[20] apply to the two photographs of the three plaintiff minors.

The first two statutory definitions are manifestly inapplicable.  Neither of the images depict sexual acts.  The second definition, "lewd exhibition of the genitals," also does not apply because under Pennsylvania law "genitals" does not

---

[20] *See* discussion at p. 20, *infra*.

include women's breasts.[21]  Since neither of the photographs depicts the girls'

genitals this section also cannot apply.

The third possible statutory application is "nudity," but that is limited by the

qualifier, "if such nudity is depicted for the purpose of sexual stimulation or

gratification of any person who might view such depiction."  The Pennsylvania

Supreme Court ruled in *Commonwealth v. Davidson*[22] that while this statutory

phrase is not facially overbroad, it must be applied strictly and narrowly to avoid

fatal overbreadth.[23]  Relying on the U.S. Supreme Court's decisions in *New York v.*

*Ferber*,[24] *Osborne v. Ohio*,[25] and *Ashcroft v. Free Speech Coalition*,[26] the

*Davidson* court acknowledged that the phrase is "not so broad as to proscribe all

depictions of minors in a state of nudity":[27]

> There is no need for a family, artistic or commercial exception
> because, in those situations, nudity is only prohibited if it is for the

---

[21] *See Commonwealth v. Dewalt*, 2000 Pa. Super. 149, 752 A.2d 915 (Pa. Super. 2000) ("genitals" defined as vagina, labia or vulva).

[22] 938 A.2d 198 (Pa. 2007).

[23] *Id.* at 214-15.

[24] 458 U.S. 747 (1982).

[25] 495 U.S. 103 (1990).

[26] 535 U.S. 234 (2002).

[27] *Id*. at 215 (citing *Osborne*, 495 U.S. at 113).

set

purposes of sexual stimulation or gratification....The General
Assembly made clear that it did not seek to punish individuals for
viewing or possessing innocent materials containing naked minors,
again, *e.g.*, a photograph of a baby's bath. As the U.S. Supreme Court
explained in *Osborne*, the purpose of such language is to allow the
"possession or viewing of material depicting nude minors where that
conduct is morally innocent. Thus, the only conduct prohibited by the
statute is conduct which is not morally innocent[.]"  *Osborne*, 495
U.S. at 113 n.10 [ ] (quotations omitted). Here, as in *Osborne*, the
statute's restrictions are not so broad as to proscribe all depictions of
minors in a state of nudity, but rather only those depictions which
constitute child pornography as defined.[28]

The statute applies to images that might not meet the first two applications

but where the person taking or possessing the photographs had an obviously

prurient intent, like the man surreptitiously videotaping girls changing in a beach-

house bathroom in *Commonwealth v. Savich*,[29] or a naked man posed in a

photograph with smiling naked boys displaying their genitals in *Commonwealth v.*

*Tiffany*.[30]  These opinions focused on the intent of the person who took or

possessed the photos, not the children depicted in them – an issue addressed in the

next section.  But even if Nancy Doe's uncovered breasts constitute "nudity,"

there is nothing in the picture that suggests it was "depicted for the purpose of

---

[28] 938 A.2d at 215.

[29] 716 A.2d 1251 (Pa. Super. 1998), *alloc. denied*, 558 A.2d 457 (Pa. 1999)
(discussed in *Davidson* at 938 A.2d at 211-212).

[30] 926 A.2d 503 (Pa. Super. 2007) (discussed in *Davidson* at 938 A.2d at
214.

sexual stimulation or gratification."  These pictures are less revealing than the

ones in *Lesoine v. County of Lackawanna*,[31] where this Court concluded, and the

Third Circuit affirmed, that "as a matter of law" photographs taken by a

photographer of her stepdaughter and her stepdaughter's two female friends (ages

15 and 16) standing nude under an outdoor shower did not violate § 6312.[32]  The

photos in *Lesoine* involved total nudity, whereas here Nancy Doe is covered by a

towel wrapped below her breasts.

> **b.    A Minor's Act of Appearing in Revealing Photographs Has not Been Made a Crime by Section 6312.**

Anti-child-pornography laws, generally, are designed to protect minors

against exploitation and abuse,[33] and § 6312 is no exception.[34]  The victims of

child pornography are the minors shown in the images.  Accordingly, § 6312

---

[31] No. 3:98-CV-0764, 2000 WL 572466 (M.D. Pa. May 5, 2000) (partially granting summary judgment); No. 3:98-CV-0764, 2000 WL 1839140 (M.D. Pa 2000) (denying motion for reconsideration), *aff'd*, 77 Fed. Appx. 74, 78 (3d Cir. 2003).

[32] *Id.*

[33] *See, e.g., Free Speech Coalition*, 535 U.S. at 249-251; *id*. at 250 (*Osborne* "anchored its holding in the concern for the participants, those whom it called the 'victims of child pornography'").

[34] *See Davidson*, 595 Pa. at 36 ("each image of child pornography victimized each child and subjected the child to 'precisely the type of harm the statute seeks to prevent.'") (citation omitted).

directs the criminal prohibitions at those who victimize the minor subjects of the photos. The statute makes it illegal to depict a minor, or cause a minor to be depicted when engaged in a prohibited sexual act, to disseminate such depictions, or to possess such depictions.  §§ 6312(b)-(d).  The statute does not punish the subject depicted in the prohibited images; they are considered the victims and the statute seeks to protect them.  Even a sixteen-year-old minor who was knowingly videotaped having consensual sex with an adult was not prosecuted because "that child too should be afforded the same protection" as a non-consenting victim.[35]

In this case Skumanick is threatening to prosecute Marissa, Grace, and Nancy Doe for being the subjects of the pictures, not for taking, disseminating or even possessing them.  In threatening to prosecute the *subjects* of the photographs, Skumanick has moved well beyond the terms of the statute, or of any recorded application of it.  He seeks to prosecute the alleged victims of the photos.

Skumanick has advanced the remarkable argument that by acquiescing in becoming the subject of the photographs, Marissa, Grace, and Nancy Doe have become "accomplices" in the violation of § 6312 by the individuals who took and disseminated the photos, pursuant to 18 Pa.C.S. § 306 (2008).  *See* Complaint ¶ 41.  In other words, Skumanick claims that the subject of child pornography

---

[35] *Commonwealth v. Kitchen*, 814 A.2d 209, 214-15 (Pa. Super. 2002).

should be prosecuted as an "accomplice" in her own abuse, an argument that is, to the best of counsel's knowledge, entirely without precedent or support in Pennsylvania law.  Plaintiffs' counsel have been unable to discover *any* reported case in which the depicted minor, who is to be protected by § 6312, has been charged as an "accomplice" in the alleged crime, any more than victims of statutory rape are held to be "accomplices" because of their lack of resistance.

Skumanick's argument flies in the teeth of Pennsylvania's accomplice-liability statute, 18 Pa.C.S. § 306 (f)(2008), which provides that "a person is not an accomplice in an offense committed by another person if: (1) he is a victim of that offense; [or] (2) the offense is so defined that his conduct is inevitably incident to its commission."  As we have noted, the law of Pennsylvania regards minors depicted in child pornography as victims of the offense; to charge them as accomplices is simply at odds with the statutory exception of 306(f)(1).

So, too, the offenses of producing, distributing or possessing child pornography cannot occur in the absence of abuse of a real child in the making of the images.[36]  The appearance of  minors in the depiction is an "inevitable incident" of the offence.  Yet while the legislature has made it illegal to depict minors, it has not made it illegal for minors to allow themselves be subjected to

---

[36] *See Free Speech Coalition, supra.* ; Davidson, 595 Pa. at 7.

depiction.  Under these circumstances, accomplice liability is precluded by 306(f)(2).[37]

In sum, while the Pennsylvania General Assembly has made it illegal to depict minors in child pornography, it has not made it illegal for minors to allow themselves to be subjected to such depiction.  The Commonwealth has a strong interest in the enforcement of laws that its legislature has passed, but it has no interest (and can constitutionally have no interest) in prosecuting non-existent laws.[38]

>        **2.    The Plaintiff Minors' Conduct Cannot Be Made a Crime without Violating the Constitutional Guarantees of Free Expression.**

The process of taking a photograph, like painting a self portrait, writing in a diary, drafting personal correspondence, or mounting a theatrical production, is a

---

[37] *Commonwealth v. Fisher*, 426 Pa. Super. 391, 396 (Pa. Super. 1993).

[38] In discussions with counsel, Skumanick has suggested that he may seek to bring charges of open lewdness, 18 P.S. § 5901, or "criminal use of a communications facility," 18 P.S. § 7512. With respect to "open lewdness," the acts at issue involve neither public display to those likely to be affronted or alarmed, *see Commonwealth v. Allsup*, 392 A.2d 1309 (Pa. 1978), nor public nudity or sexuality, *see Commonwealth v. Williams*, 574 A.2d 1161, 1163 (Pa. Super. 1990).  § 7512 applies only to predicate felonies, so the misdemeanor of "open lewdness," even if it did apply, cannot provide the predicate.  Since the images at issue do not come within the terms of the § 6312 felony prohibition, that provision also cannot support a prosecution for this crime.  *See Commonwealth v. Moss,* 852 A.2d 374 (Pa. Super 2004).

20

mode of expression that is protected the First Amendment.[39]   Any effort to take

such expression outside of First Amendment protection, by for example labeling it

child pornography, must be narrowly drawn to avoid punishing more speech than

necessary to accomplish the government's goals.[40]   Both the Pennsylvania and

U.S. Supreme Courts have recognized the danger that broad prohibitions of child

pornography will have the effect of impermissibly punishing constitutionally

protected expression.  The U.S. Supreme Court has recognized that pictures of

nude minors, without more, are expression protected under the First Amendment.[41]

And the Supreme Courts of both the United States and Pennsylvania have

---

[39] *See, e.g.*, *Tunick v. Safir*, 228 F.3d 135 (2d Cir. N.Y. 2000) (upholding injunction against interference in photographer's photo shoot of nude models); *see also, e.g.*, *Gilles v. Davis*, 427 F.3d 197, 212 n.14 (3d Cir. 2005); *Bery v. City of New York*, 97 F.3d 689 (2d Cir. 1996); *Whiteland Woods, L.P. v. Twp. of West Whiteland*, 193 F.3d 177, 180 (3d Cir. 1999); *Davis v. Stratton*, 575 F. Supp. 2d 410 (N.D.N.Y. 2008); *Porat v. Lincoln Towers Cmty. Ass'n*, No. 04 Civ. 3199, 2005 WL 646093 at *5 (S.D.N.Y. March 21, 2005); *Robinson v. Fetterman*, 378 F. Supp. 2d 534, 541 (E.D. Pa. 2005).

[40]   *See Free Speech Coalition*, 535 U.S. at 251 ("where the speech is neither obscene nor the product of child sexual abuse, it does not fall outside the protection of the First Amendment"); *Ferber*, 458 U.S. at 764-65 (to meet demands of Constitution, prohibitions on child pornography "must be adequately defined by the applicable state law ... the nature of the harm to be combated requires that the state offense be limited to works that visually depict sexual conduct by children below a specified age").

[41] *Osborne*, 495 U.S. at 112 ("depictions of nudity, without more, constitute protected expression"); *Ferber*, 458 U.S. at 765 n.18 ("[N]udity, without more[,] is protected expression.").

approved child-pornography restrictions only when their terms do not reach

innocuous images whose production does not involve the abuse and exploitation

of children.[42]

Because the photos depicting the plaintiff minors contain, at most, innocent

nudity in the case of Nancy Doe and no nudity in the case of Marissa and Grace,

and involved no abuse of children in their production, they cannot be proscribed

under the First Amendment.  Although Defendant Skumanick may view the

images of Marissa, Grace, and Nancy Doe as immoral or inappropriate, the state

may not suppress nude images simply on the basis of official opprobrium.[43]  As

---

[42] *See Free Speech Coalition*, 535 U.S. at 251 (invalidating prohibition on "virtual" child pornography created by computer simulation on ground that, unlike pornography produced through use of actual children, images were not "themselves the product of child sexual abuse"); *Osborne*, 495 U.S. at 113-14 (upholding statute that punished materials depicting minors "in a state of nudity" on basis of state-court construction that limited the prohibited exhibition to nudity that "constitutes a lewd exhibition or involves a graphic focus on the genitals" because limitation "avoided penalizing persons for viewing or possessing innocuous photographs of naked children"); *Ferber*, 458 U.S. at 764-65 (upholding state statute prohibiting child pornography that proscribed specifically defined sexual acts); *Commonwealth v. Davidson*, 938 A.2d 198, 214-15 (Pa. 2007) (upholding Section 6312 because its "restrictions are not so broad as to proscribe all depictions of minors in a state of nudity").

[43] *See Erznoznik v. Jacksonville*, 422 U.S. 205, 213,(1975) (striking down city ordinance that banned display of "any motion picture, slide, or other exhibit in which the human male or female bare buttocks [or], human female bare breasts... are shown" where the images were not "obscene even as to minors").

the Court observed in *Erznoznik*, "Speech that is neither obscene as to youths nor subject to some other legitimate proscription cannot be suppressed solely to protect the young from ideas or images that a legislative body thinks unsuitable for them."[44]

For all of these reasons, the photographs of the plaintiff minors do not constitute child pornography, and the prosecution of the plaintiff minors for engaging in child pornography by posing for the photos cannot succeed. Skumanick's threats to prosecute the girls for child pornography are thus designed not to accomplish the lawful purpose of bringing those who violate the law to justice but to coerce the girls to participate in his efforts to re-educate teenage girls who engage in what he considers "provocative" behavior.

To be sure, Skumanick can, consistent with the Constitution, present an educational program to the girls of Wyoming County offering his views of appropriate female behavior. But the girls of Wyoming County have a constitutional right not to participate in that program and their parents have a constitutional right to prevent them from participating. Accordingly, Skumanick's effort to coerce plaintiffs' participation in the victimology education program by threatening baseless criminal charges against them if they refuse is an

---

[44] 422 U.S. at 213-24.

unconstitutional effort to retaliate against the girls and their parents for asserting

their right to free expression under the First Amendment and right of family

autonomy under the Fourteenth Amendment.  Defendant Skumanick's efforts to

wield his prosecutorial authority in retaliation for the assertion of the plaintiffs'

constitutional rights must be enjoined.

## II.    FAILURE TO ENJOIN THE DEFENDANT'S THREATENED PROSECUTION OF PLAINTIFF MINORS WILL RESULT IN IRREPARABLE HARM TO PLAINTIFFS.

"The loss of First Amendment freedoms, for even minimal periods of time,

unquestionably constitutes irreparable injury."[45]  Defendant Skumanick's threat to

prosecute plaintiffs for posing for "provocative" photographs, in conjunction with

his publicly stated claim that even photos of minors in bathing suits can be

prosecuted as child pornography, *see* Complaint ¶ 29, have had a chilling effect on

plaintiffs' expression as they must now fear that posing for any photo in which

---

[45] *Elrod v. Burns*, 427 U.S. 347, 373-374 (1976) (emphasis added).  *See also, e.g.*, *Reno*, 217 F.3d at 180 (generally, in First Amendment challenges, plaintiffs who meet merits prong of test for a preliminary injunction "will almost certainly meet the second, since irreparable injury normally arises out of the deprivation of speech rights.") (citation omitted); 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 2948.1 (2d ed.1995) ("When an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.").

they are not covered from head to toe could constitute grounds for prosecution.[46]

Indeed, Skumanick's expansive view of what constitutes child pornography,

which is essentially any image that he finds personally offensive regardless of its

actual illegality — and his demonstrated willingness to wield his prosecutorial

power to punish the subjects of such photos — will have a chilling effect on the

free-expression rights of all teenage girls in Wyoming County to pose for

photographs on the beach in their bikinis and the free-expression rights of those

girls' parents to take photographs of their children during family vacations or even

at the local pool.  Accordingly, unless the threatened prosecution is enjoined and

declared unconstitutional, plaintiffs' free-expression rights will be irreparably

harmed.

  Plaintiffs will also suffer irreparable harm if the prosecution is not enjoined

because, if the prosecution is carried out and the girls are acquitted, they will be

unable to seek compensatory damages for the violation of their First and

---

  [46] *See Dombrowski v. Pfister*, 380 U.S. 479, 494 (1965) (threat of
prosecution is irreparable harm when prosecution would have chilling effect on
speech because "[e]ven the prospect of ultimate failure of such prosecutions by no
means dispels their chilling effect on protected expression"); *Lysaght v. New
Jersey*, 837 F. Supp. 646 (D.N.J. 1993) (ruling that threat of criminal prosecutions
under statute is irreparable harm because they would chill plaintiffs' speech).

Fourteenth Amendment rights from Skumanick, who is entitled to prosecutorial immunity.[47]  Where compensatory damages are wholly unavailable, this on its own satisfies the requirement that harm be irreparable.[48]  Only the entry of a temporary restraining order or preliminary injunction can thwart irreparable harm to plaintiffs.

### III.   GRANTING THE REQUESTED INJUNCTIVE RELIEF WILL RESULT IN NO HARM TO THE DEFENDANT.

Defendant can point to no evidence that he or the county will be irreparably harmed if his threatened prosecution of the plaintiff minors is enjoined pending the resolution of this lawsuit.  Skumanick has deferred filing charges for several months, demonstrating that the plaintiffs are not a serious public-safety threat.

Moreover, granting a temporary restraining order/preliminary injunction would simply delay the plaintiffs' decision about whether to participate in the informal adjustment pending the determination by this court on the legality of the threatened prosecution.  If, upon the resolution of the case, the Court determines

---

[47] *See, e.g.*, *Van De Kamp v. Goldstein*, 129 S. Ct. 855, 861 (2009) ("absolute immunity applies when a prosecutor prepares to initiate a judicial proceeding").

[48] *See, e.g.*, *Hoxworth v. Blinder Robinson & Co., Inc.*, 903 F.2d 186, 205 (3d Cir. 1990) (even where monetary damages would be sufficient, harm is irreparable because defendants could not pay damages).

that the threatened prosecution is not retaliatory, and the plaintiffs decide not to participate in the informal adjustment, then Skumanick can bring criminal charges against the plaintiffs at that point, as the statute of limitations for offenses committed under 18 P.S. § 6312 is twelve years.[49]  Thus, the granting of a temporary restraining order or injunction until the resolution of plaintiffs' lawsuit will not harm defendant or his obligations as the district attorney, since if the plaintiffs lose Skumanick can still bring criminal charges.[50]

Moreover, because Skumanick is a governmental agent, he has no legally cognizable interest in bringing a retaliatory criminal prosecution to suppress plaintiffs' constitutionally protected free-speech rights or their parents' constitutionally protected right to direct their children's upbringing.

Accordingly, the threatened injury to the plaintiffs more than outweighs the damage to the defendant caused by delaying his efforts.

### IV.    IT IS IN THE PUBLIC INTEREST TO PROTECT THE EXERCISE OF FIRST AND FOURTEENTH AMENDMENT RIGHTS FROM RETALIATION.

---

[49] 42 P.S. § 5552 (b.1).

[50] *See Westin v. McDaniel*, 760 F. Supp. 1563, 1570 (M.D. Ga. 1991) (holding that preliminarily enjoining district attorney from proceeding against him in any fashion pending resolution of lawsuit would cause little or no harm to prosecutor because statute of limitations would not bar prosecution if plaintiff lost case).

The public interest will almost always favor the movant if the movant demonstrates both a likelihood of success on the merits and irreparable injury.[51] This case is no different. The plaintiffs have demonstrated that Skumanick's threatened prosecution of the girls is baseless and is designed only to unconstitutionally coerce them into submitting to an education program and a period of probation. The plaintiffs have also demonstrated that the threatened prosecution will cause irreparable injury by chilling their First Amendment-protected expression as well as the expression of others in Wyoming County.

Moreover, it is in the public interest to enjoin a threatened criminal prosecution when that prosecution is (1) baseless and (2) brought in retaliation for the assertion of constitutionally protected rights.[52]

---

[51] *AT & T Co. v. Winback & Conserve Program*, 42 F.3d 1421, 1427 n. 8 (3d Cir. 1994).

[52] *See Westin*, 760 F. Supp. at 1570 (explaining that in case alleging that threatened prosecution constituted unconstitutional retaliation, "only possible harm to the public interest by the granting of an injunction would be the delay caused by the resolution of the underlying suit, and in truth the court does not believe that this represents any harm to the public at all. If [plaintiff] ultimately wins his civil suit, the public interest will have been served by the granting of a preliminary injunction preventing unjust retaliation against him by state officers. The granting of an injunction will therefore not harm the public interest, and, depending on the result of [plaintiff's] suit, may serve it").

## <u>CONCLUSION</u>

WHEREFORE, as Plaintiffs have satisfied the four prerequisites for issuance of a temporary restraining order and/or preliminary injunction, this Court should issue a TRO/preliminary injunction to enjoin the Defendant, along with his officers, employees, agents and assigns, from initiating criminal charges against plaintiffs Marissa Miller, Grace Kelly and Nancy Doe for the two photographs at issue, or for any other photographs of the girls unless the images depict sexual activity or exhibit the genitals in a lascivious way.

Respectfully submitted,

  /s/ Witold J. Walczak
Witold J. Walczak
PA ID No.:  62976

AMERICAN CIVIL LIBERTIES FOUNDATION
   OF PENNSYLVANIA
313 Atwood Street
Pittsburgh, PA  15213
(412) 681-7864 (tel.)
(412) 681-8707
vwalczak@aclupgh.org

  /s/ Valerie A. Burch
Valerie A. Burch
PA ID No.: 92873

AMERICAN CIVIL LIBERTIES FOUNDATION
   OF PENNSYLVANIA
105 North Front Street, Suite 225
Harrisburg, PA 17101
(717) 236-7827 (tel.)
(717) 236-6895 (fax)
vburch@aclupa.org

  /s/ Seth F. Kreimer
Seth F. Kreimer
PA I.D. No. 26102

3400 Chestnut Street
Philadelphia, PA 19104
(215) 898-7447 (tel.)

*Counsel for Plaintiffs*

March 25, 2009