## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARYJO MIILLER, individually** | **:** | **No. 3:09cv540** |
| **and on behalf of her minor daughter,** | **:** | |
| **Marissa Miller,** | **:** | **(Judge Munley)** |
| **JAMI DAY, individually and on behalf** | **:** | |
| **of her minor daughter,** | **:** | |
| **Grace Kelly, and** | **:** | |
| **JANE DOE, individually and on** | **:** | |
| **behalf of her minor daughter, Nancy** | **:** | |
| **Doe,** | **:** | |
| **Plaintiffs** | **:** | |
| | **:** | |
| **V.** | **:** | |
| | **:** | |
| **GEORGE SKUMANICK, JR., in his** | **:** | |
| **official capacity as District Attorney** | **:** | |
| **of Wyoming County,** | **:** | |
| **Defendant** | **:** | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## <u>MEMORANDUM</u>

Before the court is plaintiffs' motion for a temporary restraining order

(TRO).  Having been briefed and a hearing having been held, the matter is

ripe for disposition.

**Background**

At issue in this case is the practice of "sexting," which has become

popular among teenagers in recent years.  (Complaint (Doc. 1) (hereinafter

"Complt.") at ¶ 7).  According to the plaintiffs, this is "the practice of sending

or posting sexually suggestive text messages and images, including nude or semi-nude photographs, via cellular telephones or over the Internet." (Id.). Typically, the subject takes a picture of him- or herself with a digital camera or cell phone camera, or asks someone else to take that picture. (Id. at ¶ 8). That picture is stored as a digitized image and then sent via the text-message or photo-send function on a cell phone, transmitted by computer through electronic mail, or posted to an internet website like Facebook or MySpace. (Id. ¶ 9). This practice is widespread among American teenagers; studies show approximately 20% of Americans age 13-19 have done it. (Id. ¶ 10).

**Images and Threatened Prosecutions**

In October 2008, Tunkhannock, Pennsylvania School District officials confiscated several students' cell phones, examined them and discovered photographs of "scantily clad, semi-nude and nude teenage girls." (Id. at ¶ 12). Many of these girls were enrolled in the district. (Id.). The School District reported that male students had been trading these images over their cell phones. (Id. at ¶ 13).

The School District turned the phones over to Defendant Skumanick, the District Attorney of Wyoming County, Pennsylvania. (Id.at ¶ 13). Skumanick began a criminal investigation. (Id.). In November 2008,

Skumanick stated publically to local newspaper reporters and a district assembly at Tunkhannock High School that students who possess inappropriate images of minors could be prosecuted under Pennsylvania law for possessing or distributing child pornography, 18 PENN.STAT. § 6312, or criminal use of a communication facility, 18 PENN. STAT. § 7512.  (Id. at ¶ 15). Skumanick pointed out that these charges were felonies that could result in long prison terms and would give even juveniles a permanent record.  (Id. at ¶ 16).  Defendant contends that if found guilty of these crimes, the three minor plaintiffs would probably be subject to registration as sex offenders under Pennsylvania's Registration of Sexual Offenders Act ("Meghan's Law), 42 P.S. ¶ 9791, for at least ten years and have their names and pictures displayed on the state's sex-offender website.  (Id. at ¶ 17).

On February 5, 2009, Skumanick sent letters to the parents of approximately twenty Tunkhannock students, including the adult plaintiffs in this case.  (Id. at ¶ 19).  Skumanick sent this letter to the students on whose cell phones the pictures were stored and to the girls shown in the photos.  (Id. at ¶).  According to the plaintiffs, he did not send the letter to those who had disseminated the images.  (Id.).

The letter informed the parents that their child had been "identified in a

3

police investigation involving the possession and/or dissemination of child pornography." (Id. at ¶ 20a).  The letter also promised that the charges would be dropped if the child successfully completed a six- to nine-month program focused on education and counseling.  (Id. at ¶ 20b).  The children and parents were invited to a meeting on February 12, 2009 to discuss the issue. (Id. at ¶ 20c).  The letter warned that "charges will be filed against those that do not participate or those that do not successfully complete the program." (Id. at ¶ 20d).

Skumanick held the meeting on February 12, 2009 at the Wyoming County Courthouse.  (Id. at ¶ 26).  At that meeting, Skumanick reiterated his threat to prosecute unless the children submitted to probation, paid a $100 program fee and completed the program successfully.  (Id. at ¶ 27).  When asked by a parent at the meeting why his daughter–who had been depicted in a photograph wearing a bathing suit–could be charged with child pornography, Skumanick replied that the girl was posed "provocatively," which made her subject to the child pornography charge.  (Id. at ¶ 29).  When the father of Marissa Miller asked Skumanick who got to decide what "provocative" meant, the District Attorney replied that he refused to argue the question and reminded the crowd that he could charge all the minors that

4

night.  (Id. at ¶ 30).  Instead, Skumanick asserted, he had offered them a plea deal.  (Id.).  He told Mr. Miller that "these are the rules.  If you don't like them, too bad."  (Id.).

The proposed program–which the plaintiffs call a "re-education program"–is divided between girls' and boys' programs.[1]  (Id. ¶ 32).  The program is designed to teach the girls to "gain an understanding of how their actions were wrong," "gain an understanding of what it means to be a girl in today's society, both advantages and disadvantages," and "identify non-traditional societal and job roles."  (Id.).  Included in the "homework" for the program is an assignment including "[w]hat you did" and "[w]hy it was wrong." (See Course Outline (Exh. 2 to Complt.) (Doc. 1-5)).  The program was initially purported to last six to nine months, but was eventually reduced to two hours per week over five weeks.  (Complt. at ¶ 31).

At the February 12 meeting, Skumanick asked all those present to sign an agreement assigning the minors to probation and to participation in the program.  (Id. at ¶ 33).  Only one parent agreed to sign the form for her child. (Id.).  Skumanick gave the parents forty-eight hours to agree to the offer or the minors would be charged.  (Id. at ¶ 34).  After parents objected,

---

[1]The plaintiffs attach syllabi from the programs as exhibits to their complaint.

Skumanick extended the time frame for agreeing to his program to a week.

(Id.).  Skumanick told parents he would show them the photographs in

question at the end of the meeting.  (Id. at ¶ 35).

### The Photographs Involved

All of the adult plaintiffs here are parents of daughters whose

photographs appeared on the confiscated cell phones.  They all reside in the

Tunkhannock School District, and their children attend the Tunkahannock

Schools.

Plaintiff MaryJo Miller and her ex-husband met with Skumanick at his

invitation on February 10, 2009.  (Id. at ¶ 21).  Skumanick showed them the

photograph that involved their daughter Marissa.  (Id.).  The photograph in

question was approximately two years old, and showed Plaintiffs Marissa

Miller and Grace Kelly from the waist up, each wearing a white, opaque bra.

(Id. at ¶ 22).  Marissa was speaking on the phone and Grace using her hand

to make the peace sign.  (Id.).  The girls were thirteen years old at the time

the picture was taken.  (Id.).  Despite Ms. Miller's protests to the contrary,

Skumanick claimed that this image met the definition of child pornography

because the girls were posed "provocatively."  (Id. at ¶ 23).  The Millers

objected to Skumanick's legal claims, insisting that their daughter had a right

6

to a jury trial if charged.  (Id. at ¶ 24).  Skumanick informed them that no jury

trials exists in Juvenile Court.  (Id.).  He also promised to prosecute both girls

on felony child-pornography charges if they did not agree to his conditions.

(Id. at ¶ 25).  After the February 12 meeting, Skumanick showed Jane Doe

the photograph of her daughter Nancy.[2]  (Id. at ¶ 36).  The photograph, more

than a year old, showed Nancy Doe wrapped in a white, opaque towel.  (Id.).

The towel was wrapped around her body, just below her breasts.  (Id.).  It

looked as if she had just emerged from the shower.  (Id.).

The plaintiffs emphasize that neither of these two photographs depicted

any sexual activity.  (Id. at ¶ 37).  Neither showed the girls' genitalia or pubic

area.  (Id. at ¶ 38).  Skumanick said the pictures were among those on the

confiscated cell phones, but he would not divulge who owned the phones.

(Id. at ¶ 39).  At the time that plaintiffs filed their complaint, Skumanick had

refused repeated requests to provide plaintiffs' counsel with copies of the

pictures.  (Id. at ¶ 40).  He asserted that he could be charged with a child

pornography crime for sharing a copy.  (Id.).  The minors insist that they did

not disseminate the photographs to anyone else, but that another person sent

---

[2]Plaintiff Jane Doe filed her complaint under a pseudonym, seeking to protect her
identity and that of her daughter.  She also filed a motion for leave of court to do so.  (See
Doc. 3).

those pictures "to a large group of people" without their permission.  (Id. at ¶ 50).

### Potential Charges Against the Plaintiffs

According to the complaint, Skumanick's only basis for the threatened prosecution of the three girls is that they allowed themselves to be photographed.  (Id. at ¶ 41).  In early March, he asserted to plaintiffs' counsel that the three were accomplices in the production of child pornography.  (Id.). During the hearing on the TRO conducted by this court on March 26, 2009, the defendant reiterated that he intends to charge the girls if they refuse to participate in the education program.  (Transcript of Temporary Restraining Order Hearing, March 26, 2009 (Doc. 13) (hereinafter "T") at 44).

On February 25, 2009, plaintiffs received a letter dated February 23, 2009.  (Compt. at ¶ 42).  This letter advised parents that they were scheduled for a February 28, 2009 appointment at the Wyoming County Courthouse to "finalize the paperwork for the informal adjustment."  (Id. at ¶ 43).  Plaintiffs contend that an "informal adjustment" amounts to a guilty plea in the juvenile context, since it allows for probation before judgment.  (Id. at ¶ 43).  Parents who attended the February 28, 2009 meeting informed plaintiffs that agreeing to the informal adjustment would subject plaintiffs to the "re-education"

course, six months of probation and drug testing during those six months.  (Id. at ¶ 44).  All of the parents and minors except the three here involved agreed to the conditions.  (Id. at ¶ 45).  Defendant has temporarily deferred prosecution to the three minors here to allow plaintiffs' counsel to research the issues in this case.  (Id. at ¶ 46).   During the hearing on the TRO, defendant gave his word as an officer of the court that he would not bring charges against the minor plaintiffs before this court renders a decision.  (T. at 67).

### Plaintiffs' Complaint

Plaintiffs' complaint raises three causes of action all filed pursuant to 42 U.S.C. § 1983 for violation of constitutional rights.  Count I alleges retaliation in violation of plaintiffs' First Amendment right to free expression.  Plaintiffs contend that the photographs in question are not in violation of any obscenity law and are thus expression protected by the First Amendment.  Skumanick therefore threatens charges against them without a legitimate basis in an attempt to force the girls to abandon their constitutional rights and submit to the "re-education program," probation and drug testing.  Count II alleges retaliation in violation of plaintiffs' First Amendment right to be free from compelled expression.  The program in which the minor plaintiffs would be

compelled to participate requires them to write a paper about "how their actions were wrong."  Since minor plaintiffs did not violate any law, plaintiffs contend that this requirement is compelled speech.  Count III, brought by the minor plaintiffs' parents, alleges retaliation against the parents for exercising their Fourteenth Amendment substantive due process right as parents to direct their children's upbringing.  Plaintiffs allege that Skumanick's attempt to force their children to attend the class and participate in programs designed to let them "gain an understanding of how their actions were wrong," "gain an understanding of what it means to be a girl in today's society," and "identify non-traditional societal and job roles" infringes on their right to control the upbringing of their children.

### The Motion for a TRO

Plaintiffs filed a motion for a TRO (Doc. 2) on March 25, 2009.  The motion seeks an order from the court enjoining Defendant Skumanick and his officials, employees agents and assigns from initiating criminal charges against plaintiffs Marissa Miller, Grace Kelly and Nancy Doe for the two photographs at issue, or for any other photographs of the girls unless the images depict sexual activity or exhibit the genitals in a lascivious way.

### Hearing on the TRO

10

The court held a hearing on plaintiffs' motion for a TRO on March 26, 2009.  At the hearing, the defendant agreed that Plaintiffs Jane and Nancy Doe should be allowed to proceed under pseudonyms, and that the court record be sealed to protect the identities of these individuals and to prevent the release of sensitive information.[3]  The defendant also agreed to turn over to the plaintiffs' counsel copies of the photographs that are at issue in this case.  Plaintiff MaryJo Miller testified during the hearing, as did Defendant Skumanick.  After hearing this testimony, the court entertained argument from both sides.  The court also ordered the defendant to file a brief in response to plaintiffs' motion.  Defendant did so on March 27, 2009.  Plaintiffs then filed a reply brief, bringing the case to its present posture.

**Jurisdiction**

Because the complaint is brought pursuant to 42 U.S.C. § 1983, the court has jurisdiction pursuant to 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

**Legal Standard**

---

[3]In any case, the court finds that the minor plaintiff's interest in having her identity protected in this sensitive matter outweighs the public's interest in knowing who brought the claim.

11

An injunction is an "extraordinary remedy" that is never awarded as of right.  Winter v. Natural Resources Defense Council, - - U.S. - - , 129 S.Ct. 365, 375 (2008) .  The Third Circuit Court of Appeals has outlined four factors that a court ruling on a motion for a preliminary injunction must consider: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest.  Crissman v. Dover Downs Entertainment Inc., 239 F.3d 357, 364 (3d Cir.2001).  These same factors are used to determine a motion for a temporary restraining order.  Bieros v. Nicola, 857 F. Supp. 445, 446 (E.D.Pa.1994).

The above factors merely "structure the inquiry" and no one element will necessarily determine the outcome. The court must engage in a delicate balancing of all the elements, and attempt to minimize the probable harm to legally protected interests between the time of the preliminary injunction to the final hearing on the merits.  Constructors Association of Western Pa. v. Kreps, 573 F.2d 811, 815 (3d Cir.1978). The movant bears the burden of establishing these elements. Adams v. Freedom Forge Corp., 204 F.3d 475,

486 (3d Cir.2000).

**Abstention**

Defendant first argues that the court should decline to hear this case because to do so would amount to a collateral attack on state criminal proceedings.  After a careful review, we disagree.

As a general matter, federal law establishes that a federal court "may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U.S.C. § 2283.  The Supreme Court has found that 42 U.S.C. § 1983, the statute under which plaintiff brought the instant action, expressly authorizes such federal action. See Mitchum v. Foster, 407 U.S. 225, 242-43 (1972) (finding that "under the criteria established in our previous decisions construing the anti-injunction statute, § 1983 is an Act of Congress that falls within the 'expressly authorized' exception to that law.").   Thus, even if there were ongoing state criminal proceedings, this court could exercise its jurisdiction to enjoin them. Still, although a court may issue an injunction in such circumstances, "the principles of equity, comity, and federalism that must restrain a federal court when asked to enjoin a state court proceeding" apply.  Id. at 243.

"When a state criminal proceeding under a disputed state criminal statute is pending against a federal plaintiff at the time his federal complaint is filed . . . unless bad-faith enforcement or other special circumstances are demonstrated, principles of equity, comity, and federalism preclude issuance of a federal injunction restraining enforcement of the criminal statute and, in all but unusual circumstances, a declaratory judgment upon the constitutionality of the statute." Steffel v. Thompson, 415 U.S. 452, 454 (1974).

The United States Supreme Court has reminded courts that "Congress, by its legislation, has adopted the policy, with certain well-defined statutory exceptions, of leaving generally to the state courts the trial of criminal cases arising under state laws, subject to review by this Court of any federal questions involved." Douglas v. City of Jeannette, 319 U.S. 157, 163 (1943). With respect to this promised deference, "equitable remedies infringing this independence of the states–though they might otherwise be given–should be withheld if sought on slight or inconsequential grounds." Id.; see also, Younger v. Harris, 401 U.S. 37 (1971) (noting that "it has been perfectly natural for our cases to repeat time and time again that the normal thing to do when federal courts are asked to enjoin proceedings in state courts is not to

14

issue such injunctions.").

Defendant insists that for the court to enjoin prosecution here would be to countenance an effort by the plaintiffs "to dictate not only to the county prosecutor what should or should not be determined illegal, but also to the community at large."  (Defendant's Brief (Doc. 12) at 7).  Here, as in Steffel, supra, however, no state criminal proceedings are pending, although they have been threatened.

In line with Steffel, the Third Circuit Court of Appeals has declared that "[a]bstention under Younger is appropriate only where (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims."  Lui v. Comm'n on Adult Entm't Establishments, 369 F.3d 319, 326 (3d Cir. 2004).  Thus, under the principles articulated by our Court of Appeals, refusing to hear this case on abstention grounds would be inappropriate, since there are no ongoing state proceedings and–as discussed below–the danger of irreparable harm is clear and imminent.  Indeed, as Justice Brennan once noted, "while a pending state prosecution provides the federal plaintiff with a concrete opportunity to vindicate his constitutional rights, a refusal on the part of the federal courts to

15

intervene when no state proceeding is pending may place the hapless plaintiff between the Scylla of intentionally flouting state law and the Charybdis of forgoing what he believes to be constitutionally protected activity in order to avoid becoming enmeshed in a criminal proceeding." Steffel, 415 U.S. at 462.  Of course, the court must still balance the four factors and determine whether issuance of a TRO is appropriate under the circumstances.[4]  The court will now examine each of the factors in turn.

**Factors for Issuing a Temporary Restraining Order**

**A.  Likelihood of success on the merits**

The court must first determine whether the plaintiffs have a reasonable likelihood of success on the merits of their claims.  Crissman, 239 F.3d at 364.  The court's opinion here should not be taken as a final adjudication on the merits, but simply a brief explanation of whether a reasonable probability

---

[4]At the hearing on the TRO, defendant contended that allowing a TRO under these circumstances would encourage other criminal defendants to come to federal court seeking an injunction in an attempt to avoid criminal charges.  The court finds that argument unavailing.  The circumstances in this case are different from those described by the defendant.  First, no charges have yet been laid, and the plaintiffs contend that the threat of charges is insincere, and merely an attempt to coerce them to abandon their rights.  Second, a typical criminal defendant could not make out a case to obtain a TRO under the standard outlined above.  Federal law carves out a small exception to the general rule that federal courts should not interfere with criminal prosecutions prior to their completion.  That exception applies to circumstances like these.

exists that the plaintiffs will prevail.  A full decision on the merits awaits discovery and a fuller examination of the issues by both parties and the court.

As a preliminary matter, all three of plaintiffs' claims are retaliation claims which allege that defendant's threatened prosecution is retaliation for the exercise of their First and Fourteenth Amendment rights for refusing to participate in the education program at issue here.  To prevail on a retaliation claim, a plaintiff must prove "(1) that he engaged in constitutionally-protected activity; (2) that the government responded with retaliation; and (3) that the protected activity caused the retaliation."  <u>Eichenlaub v. Twp. of Indiana</u>, 385 F.3d 274, 282 (3d Cir. 2004).

The plaintiffs' complaint is largely that they are being compelled–through threat of a prosecution that clearly lacks any basis–to participate in a "re-education" program with which they disagree.  Plaintiffs insist that retaliation exists here because (1) minor plaintiffs have a constitutional right to avoid the courses and their parents have a constitutional right to direct their education; (2) prosecution of the girls would be retaliation (an adverse action); and (3) because the girls' pictures were not illegal, the only reason to prosecute them would be in retaliation for exercising their constitutional right not to participate in the program.  The court will examine each of the three elements of the

17

retaliation claim to determine whether plaintiffs have established a reasonable likelihood of success on the merits.

### i. Constitutionally Protected Activity

The parents in this case have a Fourteenth Amendment right substantive due process right "to be free from state interference with family relations."  Gruenke v. Seip, 225 F.3d 290, 303 (3d Cir. 2000).  "Choices about marriage, family life, and the upbringing of children are among associational rights this Court has ranked as 'of basic importance in our society,' rights sheltered by the Fourteenth Amendment against the State's unwarranted usurpation, disregard, or disrespect."  M.L.B. v. S.L.J., 519 U.S. 102, 117 (1996) (quoting Boddie v. Connecticut, 401 U.S. 371, 376 (1971)). Indeed, "the interest of parents in the care, custody, and control of their children . . . is perhaps the oldest of the fundamental liberty interests recognized by" the Supreme Court.  Troxel v. Granville, 530 U.S. 57, 65 (2000).  As early as 1923, the Supreme Court found that "the 'liberty' protected by the Due Process Clause includes the right of parents to 'establish a home and bring up children' and 'to control the education of their own.'" Id. (quoting Meyer v. Nebraska, 262 U.S. 390, 399 (1923)).

Plaintiff MaryJo Miller testified at the TRO hearing that she did not want

her child to attend the program.  (T. at 27).  She objected to a requirement

that her daughter write an essay describing "what she did wrong and how it

affected the victim in the case."  (Id.).  From Ms. Miller's perspective, her

daughter "was the victim" of whoever sent out the photographs.  (Id.).  Since

her daughter had done "nothing wrong," she should not have to write such an

essay.  (Id.).  In their complaint, all of the parents allege that this program

violates this right to direct their children's education.  (Complt. at ¶ 66).

The minors contend that they have asserted their right to be free from

compelled speech.  "'Since *all* speech inherently involves choices of what to

say and what to leave unsaid,' one important manifestation of the principle of

free speech is that one who chooses to speak may also decide 'what not to

say.'" Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston, 515

U.S. 557, 573 (1995) (quoting Pacific Gas & Electric Co. v. Public Utilities

Comm'n of Cal., 475 U.S. 1, 11 (1986)).  Thus, "[t]he Supreme Court has long

recognized that, in addition to restricting suppression of speech, 'the First

Amendment may prevent the government from . . . compelling individuals to

express certain views.'" Forum for Academic and Institutional Rights v.

Rumsfeld, 390 F.3d 219, 235 (3d Cir. 2004) (quoting United States v. United

Foods, Inc., 533 U.S. 405, 410 (2001)).  This view exists because "'[a]t the

heart of the First Amendment lies the principle that each person should decide for himself or herself the ideas and beliefs deserving of expression, consideration and adherence.'" Id. at 236 (quoting Turner Broad. Sys., Inc. v. FCC, 512 U.S. 622, 641 (1994)).  Among the categories of compelled speech found impermissible by the supreme court "is government action that forces a private speaker to propagate a particular message chosen by the government."  Id.  Here, the minor plaintiffs contend that they will be compelled to write an essay that explains what they did wrong.  Because they contend that they in no way violated the law, they further contend that being compelled to describe their behavior as wrong on threat of a felony conviction forces them to express a belief they do not hold and thus violates their right to be free of compelled speech.

We find that both the parents and the children have asserted constitutionally protected activity sufficient to meet the standard that they are reasonably likely to succeed on the merits on this issue.

**ii. Government Retaliation**

The Third Circuit Court of Appeals has held that an adverse action by the government sufficient to support a retaliation claim has occurred if "'the alleged retaliatory conduct was sufficient 'to deter a person of ordinary

firmness' from exercising his First Amendment Rights.'" <u>Allah v. Seiverling</u>,

229 F.3d 220, 225 (3d Cir. 2000) (quoting <u>Suppan v. Dadonna</u>, 203 F.3d 228,

235 (3d Cir. 2000)).  "[A]s a general matter the First Amendment prohibits

government officials from subjecting an individual to retaliatory actions,

including criminal prosecutions, for speaking out."  <u>Hartman v. Moore</u>, 547

U.S. 250, 256 (2006).  The court finds here plaintiffs' claim that the threat of a

felony prosecution would deter an ordinary person from exercising her

constitutional rights meets the "reasonable likelihood of success on the

merits" standard.

### iii.  The Protected Activity Caused the Retaliation

In support of this prong of a retaliation claim, plaintiffs argue that the

images in question here could not possibly support a charge of child

pornography under Pennsylvania law.  As such, the defendant's threat to

charge the minor plaintiffs with a felony is not a genuine attempt to enforce

the law, but instead an attempt to force the minor plaintiffs to participate in the

education program.  The fact that the defendant continues to promise

prosecution if the girls refuse to participate indicates that the charges are

retaliation for their refusal to engage in compelled speech.  In the case of the

parents, this threat is an attempt to compel them to abandon their Fourteenth

Amendment right to control their child's upbringing.[5]

Plaintiffs assert that the defendant has no basis in Pennsylvania law for prosecuting the girls.  Defendant has asserted that the photographs are "provocative," but "provocative photos," plaintiffs contend, are not illegal under Pennsylvania law even when they involve minors.  The statute in question, 18 PENN. STAT. § 6312, prohibits the distribution of images depicting a prohibited sexual act, and defines "prohibited sexual act" to mean "sexual intercourse . . . masturbation, sadism, masochism, bestiality, fellatio, cunnilingus, lewd exhibition of the genitals or nudity if such nudity is depicted for the purpose of sexual stimulation or gratification of any person who might view such depiction."  18 PENN. STAT.  § 6312(a).  The plaintiff contends that the images here do not even remotely meet this definition.

Plaintiffs also argue that the statute does not apply to the minors here,

---

[5]Without citing to any authority, the defendant asserts that "[b]ecause no prosecution has been initiated the Plaintiffs must demonstrate that *any* underlying criminal complaint brought regarding the two photos in question would be meritless."  (Defendant's Brief at 3) (emphasis in original).  Defendant notes that he testified that he could bring other charges against the plaintiffs beyond the felonies discussed in the TRO hearing.  In his brief, points to public lewdness, 18 PENN. CONS. STAT. § 5901, and public indecency.  During the hearing, however, defendant affirmed that he planned to bring charges under 18 PENN. STAT. § 6312 for child pornography and 18 PENN. STAT. § 7501 for criminal use of a communication device if the girls refused to participate in the program.  (T. at 44).  In any case, the court notes here that plaintiffs at this point must show only a *reasonable* likelihood of success on the merits.  Indeed, even in a criminal setting, the plaintiffs would not have to demonstrate their innocence, since the burden of proof would be on the state.

who were the subjects of the photographs.   Defendant Skumanick is

threatening to prosecute the victims of the crime, not the perprtrators

according to the plaintiffs.

The court here offers no final conclusion on the merits of plaintiffs'

position.  Testimony and evidence at the TRO hearing, as well as allegations

in the verified complaint, however, indicate a reasonable likelihood that the

plaintiffs could prevail on this aspect.  While the court emphasizes that its

view is preliminary and not intended to absolve the plaintiffs of any potential

criminal liability, plaintiffs make a reasonable argument that the images

presented to the court do not appear to qualify in any way as depictions of

prohibited sexual acts.  Even if they were such depictions, the plaintiffs

argument that the evidence to this point indicates that the minor plaintiffs were

not involved in disseminating the images is also a reasonable one.  Thus, a

reasonable likelihood exists that plaintiffs will succeed on the merits, and this

factor weighs in favor of granting a TRO.

### B.  Irreparable Harm to the Plaintiffs

The next factor for us to examine is whether the plaintiffs will suffer

irreparable harm if a TRO does not issue.   Crissman, 239 F.3d at 364.

 Plaintiffs argue that even a temporary violation of First Amendment rights

constitutes irreparable harm.  Indeed, threat of prosecution has a chilling

effect on plaintiffs expressing themselves by appearing in photographs, even

such innocent photographs as those in bathing suits.  Irreparable harm also

exists because plaintiffs could not sue Skumanick if they were found not guilty

after a prosecution, since he would be immune as prosecutor.  Defendant

contends that plaintiffs have adequate remedies other than an equitable one,

and therefore they do not face any irreparable harm.  Since the minors have

not yet been prosecuted, they still have the opportunity to dispute any charges

brought against them through a defense in court and appeal following any

finding of delinquency.

Plaintiffs do not seek monetary damages from the defendant.  If they

did, they would have an adequate remedy at law and the court would normally

decline to provide equitable relief.  See Franks GMC Truck Center, Inc. v.

General Motors Corp., 847 F.2d 100, 102 (3d Cir. 1988) (finding that "[t]he

availability of adequate monetary damages belies a claim of irreparable injury

[and a] purely economic injury, compensable in money, cannot satisfy the

irreparable injury requirement.").  Here, plaintiffs seek the extraordinary

remedy of injunctive relief because they allege that defendant's actions

abrogate their First Amendment rights.  The United States Supreme Court

and the Third Circuit Court of Appeals have held that "'[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" Swartzwelder v. McNeilly, 297 F.3d 228, 241 (3d Cir. 2002) (quoting Elrod v. Burns, 427 U.S. 347, 373 (1976)).  The plaintiffs here have demonstrated a reasonable likelihood of success on the merits of their First Amendment claims, and have therefore demonstrated that they face irreparable harm from defendant's threatened actions.  This factor too weighs in favor of issuing a TRO.

### C.  Harm to the Non-Moving Party

The third factor we must examine is harm to the non-moving party. Crissman, 239 F.3d at 364.  The court finds that no harm would come to the non-moving party by delaying prosecution on this matter.  The defendant himself has to this point refrained from filing charges, and thus does not appear to feel immediate prosecution is necessary to protect the public from the crimes that the girls here allegedly committed.  Indeed, his brief in opposition to the motion for a TRO does not address the issue of harm to the non-moving party.  The court finds, therefore, that the harm to the non-moving party is clearly insignificant and outweighed by the harm faced by the plaintiffs from not granting the injunctive relief.  If defendant insists that charges be

25

filed at a later date, the twelve-year statute of limitations under Pennsylvania law means that he could bring appropriate prosecutions at the close of the litigation in this case.  42 PENN. CONS. STAT. § 5552(B.1).  The court is confident that the matter will be resolved before that statute of limitations runs.  Thus, this factor as well weighs towards granting the TRO.

### D.  Public Interest

The final factor for us to examine is the public interest.  Crissman, 239 F.3d at 364. "As a practical matter, if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff.  Nonetheless, district courts should award preliminary injunctive relief only upon weighing all four factors." AT & T v. Winback & Conserve Program, 42 F.3d 1421, 1427 n.8 (3d Cir. 1994).  The plaintiffs argue that the public interest would be protected by issuing the TRO since the public interest is served by enjoining a baseless prosecution brought in retaliation for the exercise of constitutional rights.

The court agrees with the plaintiffs that the public interest would be served by issuing a TRO in this matter as the public interest is on the side of protecting constitutional rights. This factor too supports issuing a TRO.

**Conclusion**

Upon balancing the TRO factors, we find that each factor weighs in favor of granting the TRO.  Accordingly, we will grant the plaintiffs' motion for a temporary restraining order.  An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARYJO MIILLER, individually** | : | No. 3:09cv540 |
| **and on behalf of her minor daughter,** | : | |
| **Marissa Miller,** | : | **(Judge Munley)** |
| **JAMI DAY, individually and on behalf** | : | |
| **of her minor daughter,** | : | |
| **Grace Kelly, and** | : | |
| **JANE DOE, individually and on** | : | |
| **behalf of her minor daughter, Nancy** | : | |
| **Doe,** | : | |
| **Plaintiffs** | : | |
| | : | |
| **V.** | : | |
| | : | |
| **GEORGE SKUMANICK, JR., in his** | : | |
| **official capacity as District Attorney** | : | |
| **of Wyoming County,** | : | |
| **Defendant** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

**AND NOW**, to wit, this 30th day of March 2009, the plaintiffs' motion for a

temporary restraining order (Doc. 2) is hereby **GRANTED**.  The defendant,

Wyoming County District Attorney George Skumanick, and his officials,

employees, agents and assigns, are hereby **ENJOINED** from initiating

criminal charges against plaintiffs Marissa Miller, Grace Kelly and Nancy Doe

for the two photographs at issue.   This order shall be effective immediately.

A hearing on plaintiffs' request for a Preliminary Injunction will be held

on June 2, 2009.  A scheduling order will follow.

Plaintiffs' motion for leave to file the original complaint and proceed under pseudonyms and for a protective order (Doc. 3) is hereby **GRANTED.**

Plaintiffs' motion to compel the defendant to produce the photographs in question (Doc. 4) is hereby **DENIED** as moot.  The defendant has supplied plaintiffs with the photographs.

**BY THE COURT:**

**s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**